```
            IN THE UNITED STATES DISTRICT COURT
          FOR THE WESTERN DISTRICT OF PENNSYLVANIA

WALTER LYNN, JR.,                    )
                                     )
               Plaintiff,            )
                                     )
          v.                         )    Civil Action No. 05-884
                                     )
WESTPORT INSURANCE CORPORATION,      )    JUDGE CERCONE
                                     )    MAGISTRATE JUDGE HAY
               Defendant.            )
```

## REPORT AND RECOMMENDATION

I.  RECOMMENDATION

It is respectfully recommended that the motion for summary judgment submitted on behalf of defendant (Docket No. 13) be granted, and that the motion for summary judgment submitted on behalf of plaintiff (Docket No. 15) be denied.

II.  REPORT

Plaintiff, Walter Lynn, Jr. ("Lynn"), commenced this action seeking a declaratory judgment regarding insurance benefits that he claims he is owed under a policy issued by defendant Westport Insurance Corporation ("Westport") to his employer, T.W. Scott Enterprises ("T.W. Scott").

It appears undisputed that plaintiff was employed as a tow truck driver with T.W. Scott, located in Belle Vernon, Pennsylvania, and that on March 21, 2003, at approximately 10:00 p.m., T.W. Scott's dispatcher contacted plaintiff at home to respond to a disabled vehicle.  Def. Exh. A: Complaint, ¶¶ 4, 6,

40.   Plaintiff, who typically drove a particular tow truck and, with his employer's permission, kept it at his home, responded to the call in the truck he regularly drove.  Def. Exh. C: Lynn Depo., pp. 11-12.

When plaintiff arrived at the scene he discovered that the disabled vehicle did not have a spare tire and could not be towed.  He consequently contacted the T.W. Scott dispatcher and another driver, Todd Davis, advising them that a flatbed truck was needed to retrieve the disabled vehicle.  Def. Exh. C: Lynn Depo., pp. 15-16; Def. Exh. D: Davis Depo., pp. 8-9.  Mr. Davis subsequently arrived on the scene with a flatbed truck which he regularly drove and which was owned by T.S. Scott as well.  Def. Exh. C: Lynn Depo., p. 16; Def. Exh. D: Davis Depo., p. 9.  Upon his arrival, plaintiff, who had apparently parked the tow truck directly in front of the disabled vehicle, moved his truck forward so as to allow Mr. Davis to pull the flatbed truck in front of the disabled automobile.  Def. Exh. C: Lynn Depo., pp. 14, 18.  Plaintiff then exited his tow truck and began walking back toward the disabled vehicle in anticipation of helping Mr. Davis load it onto the flatbed truck.  Def. Exh. C: Lynn Depo., p. 19.  While plaintiff was alongside the flatbed truck he was struck by the side mirror of a passing automobile causing severe injuries to his hand and forearm.  Id. at pp. 19-24. See Def. Exh. A: Complaint, ¶ 10.

2

Having apparently collected workers compensation benefits through his employment with T.S. Scott and compensation under the tortfeasor's automobile insurance policy, plaintiff now seeks a declaration that he is entitled to underinsured motorist benefits under an insurance policy ("the Policy") issued by Westport to T.S. Scott.  See Memorandum of Law in Support of Defendant's Motion for Summary Judgment, p. 5.  Plaintiff filed a complaint for declaratory judgment in the Court of Common Pleas of Westmoreland County, Pennsylvania, on May 5, 2005, and on June 27, 2005, defendant removed the case to this Court based on diversity.[1]  The parties cross-motions for summary judgment are presently before the Court.

Summary judgment is appropriate if, drawing all inferences in favor of the non-moving party, "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Summary judgment may be granted against a party who fails to adduce facts sufficient to establish the existence of any

---

[1]    According to the Notice of Removal, plaintiff is a citizen of the Commonwealth of Pennsylvania and defendant is a corporation incorporated under the laws of Missouri with its principal place of business in Kansas.  Notice of Removal, ¶¶ 3, 4. Defendant has also alleged that the amount in controversy is in excess of $75,000.00.  Id. at ¶ 6.

3

element essential to that party's case, and for which that party
will bear the burden of proof at trial. <u>Celotex Corp. v.
Catrett</u>, 477 U.S. 317 (1986). The moving party bears the initial
burden of identifying evidence which demonstrates the absence of
a genuine issue of material fact. Once that burden has been met,
the non-moving party must set forth "specific facts showing that
there is a *genuine issue for trial* ... or the factual record will
be taken as presented by the moving party and judgment will be
entered as a matter of law. <u>Matsushita Electric Industrial Corp.
v. Zenith Radio Corp.</u>, 475 U.S. 574 (1986). An issue is genuine
only if the evidence is such that a reasonable jury could return
a verdict for the non-moving party. <u>Anderson v. Liberty Lobby,
Inc.</u>, 477 U.S. 242 (1986). Thus, it must be determined "'whether
the evidence presents a sufficient disagreement to require
submission to a jury or whether it is so one-sided that one party
must prevail as a matter of law.'" <u>Brown v. Grabowski</u>, 922 F.2d
1097, 1111 (3d Cir. 1990), <u>cert</u>. <u>denied</u>, 501 U.S. 1218 (1991),
quoting <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. at 251-52.

In a declaratory judgment action concerning insurance
coverage the Court must first determine the scope of coverage
under the policy at issue. <u>Snyder Heating Co. v. Pennsylvania
Manufacturers Association Insurance Co.</u>, 715 A.2d 483, 484 (Pa.
Super. 1998), quoting <u>General Accident Insurance Co. v. Allen</u>,
547 Pa. 693, 706, 692 A.2d 1089, 1095 (1997). "Where a provision

4

of a policy is ambiguous, the policy provision is to be construed in favor of the insured and against the insurer, the drafter of the agreement. Where, however, the language of the contract is clear and unambiguous, a court is required to give effect to that language." Standard Venetian Blind Co. v. American Empire Ins. Co., 503 Pa. 300, 305, 469 A.2d 563, 566 (1983) (citations omitted).

In the instant case, it appears undisputed that the portion of the Policy at issue is endorsement CA2193(11/98), entitled "Pennsylvania Underinsured Motorists Coverage - Non-Stacked," which provides that:

> 1.  We will pay all sums the "insured" is legally entitled to recover as compensatory damages from the owner or driver of an "underinsured motor vehicle." The damages must result from "bodily injury" sustained by the "insured" caused by an "accident." The owner's or driver's liability for these damages must result from the ownership, maintenance or use of an "underinsured motor vehicle."

See Defendant's Exhibit B: The Policy, Endorsement CA 21 93 11 98, p. 1. The Policy then defines "WHO IS AN INSURED" as:

> 1.  You.
>
> 2.  If you are an individual, "any family member."
>
> 3.  Anyone else "occupying" a covered "motor vehicle" or a temporary substitute for a "covered motor vehicle." The covered "Motor vehicle" must be out of service because of its breakdown, repair, servicing, "loss" or destruction.

5

       4.    Anyone for damages he or she is entitled to recover because of "bodily injury" sustained by another "insured."

Id. at p. 2.  At issue in this case is whether plaintiff was "occupying" a covered motor vehicle, i.e., the flatbed truck. "Occupying" is defined under the Policy as "in, upon, getting in, on, out or off."  Id. at p. 3.

      Both of the parties have relied upon Utica Mutual Insurance Co. v. Contrisciane, 504 Pa. 328, 336, 473 A.2d 1005, 1009 (1984)("Utica"), as setting forth the criteria that must be satisfied before a person that is engaged in the lawful use of an insured vehicle will be considered to be "occupying" that vehicle.[2]  Specifically, the Court found that the claimant must establish the following:

      (1) there is a causal relation or connection between the injury and the use of the insured vehicle;

      (2) the person asserting coverage must be in a reasonably close geographic proximity to the insured vehicle, although the person need not be actually touching it;

      (3) the person must be vehicle oriented rather than highway or sidewalk oriented at the time; and

      (4) the person must also be engaged in a transaction essential to the use of the vehicle at the time.

---

[2]    We note here that the word "occupying" in the Utica policy, much like in the instant case, was defined as: "in or upon or entering into or alighting from."  Id., 504 Pa. at 334, 473 A.2d at 1008.

<u>Id.</u>, 504 Pa. at 336, 473 A.2d at 1009.  In adopting this standard the Court focused on "whether the person claiming benefits was performing an act (or acts) which is (are) normally associated with the immediate 'use' of the auto."  <u>Id.</u>

Defendant argues that plaintiff was not "occupying" the flat bed truck as he is unable to establish factors (1), (3) or (4) of the <u>Utica</u> test.  Conversely, plaintiff argues that the evidence permits a finding that all four prongs of the <u>Utica</u> test have been satisfied and that he is therefore entitled to coverage as a matter of law.

While the Court agrees with defendant that plaintiff is unable demonstrate that he was occupying the flatbed truck and, thus, is not entitled to coverage with respect to that vehicle, the Court does not agree that <u>Utica</u> is determinative of the issue.

In <u>Utica</u>, Kenneth Contrisciane was in an accident while driving an automobile owned by his employer.  The police officer who arrived at the scene asked Mr. Contrisciane for his driver's license and registration which Mr. Contrisciane went to retrieve from his vehicle.  When he returned, the officer was sitting in the police car completing an accident report.  While Mr. Contrisciane was standing beside the police vehicle he was struck and killed by an automobile driven by an underinsured motorist. Linda Contrisciane, the executrix of Mr. Contrisciane's estate,

sought underinsured motorist coverage from Utica, the employer's insurer.  The issue before the Court was whether Mr. Contrisciane was "occupying" the employer's vehicle so as to be covered under the employer's policy.

In deciding the issue, the Court first set forth the four criteria outlined above and, finding that they had been satisfied, held that the term "occupying" was properly construed to cover Mr. Contrisciane.  Id.  In so holding, the Court relied on the fact that Mr. Contrisciane was in lawful possession of the vehicle at the time of the accident; that he was required by law to stop and exchange information once involved in the accident; that he was thereafter directed by the police officer to bring his license and registration to the police car; that his fiancé remained in the car anticipating the continuance of their journey; and that at all times Mr. Contrisciane was engaged in transactions essential to his continued use of the vehicle; and that it was only because of the mandated requirements of the police officer that he found himself physically out of contact with his vehicle.  Id.

Given the facts in Utica and the Court's ultimate holding, it appears that the Court was being asked to decide only under what circumstances a person who had occupied an insured vehicle but who was injured while outside the vehicle would still be considered an occupant at the time of the accident for

8

purposes of invoking insurance coverage.  Indeed, the Court not
only stated that the cited criteria are applicable "when a person
is engaged in the lawful use of an insured vehicle," as Mr.
Contrisciane had been prior to the accident, but found that the
*continued* use of the vehicle and the *continuance* of the journey
were significant factors in deciding the case.  Id.

In Downing v. Harleysville Insurance Co., 412 Pa.
Super. 15, 602 A.2d 871 (1992), however, the Pennsylvania
Superior Court found the trial court's utilization of the four
Utica factors to determine whether the claimant in that case was
"occupying" the insured vehicle was error because it ignored the
prerequisite to its application, namely, whether the claimant had
ever been in the insured vehicle.[3]  In so finding, the Court
stated:

> In defining the term "occupant" in [*Utica*]
> and its predecessor *Tyler [v. Insurance
> Company of North America,* 311 Pa. Super. 25,
> 457 A.2d 95 (1983)], the courts were
> considering whether a person who had alighted
> from a vehicle remained an occupant of the
> vehicle.  In such a situation [*Utica*] directs
> that the four criteria it sets forth are to
> be utilized to determine whether the injured
> party should be entitled to recover as an
> "occupant" of the vehicle. In both *Tyler* and
> [*Utica*] the injured party had been traveling

---

[3]   In Downing, the claimant and an individual in whose car
they were traveling stopped to assist a motorist who
had a flat tire.  While standing next to the disable
car, Mr. Downing was struck by a third vehicle operated
by an uninsured motorist.  Id., 412 Pa. super. at 18-
19, 602 A.2d at 872.  Mr. Downing sought benefits from,
inter alia, the insurer of the disabled vehicle.

> in the vehicle prior to the accident and the
> court was considering the injured parties'
> continued relationship with that vehicle.

Id., 412 Pa. Super. at 24, 602 A.2d at 85.  Finding that Mr.

Downing had not alighted from and had never been inside the

disabled car the Court concluded, without applying the Utica

test, that he was not an occupant of the disable vehicle.  Id.

See Aetna Casualty & Surety Co. v. Kemper Insurance Co., 657 F.

Supp. 213, 215 n.3 (E.D. Pa. 1897) (Declining to address the

issue of whether the individuals who had stopped to help a

disabled pick-up truck were occupants of the pick-up truck as

being clearly without merit.)

In the instant case, it is undisputed that plaintiff

was never inside the flat bed truck nor in the process of getting

in, out, on, or off of it.  See Def. Exh. C: Lynn Depo., pp. 30-

31; Def. Exh. D: Davis Depo., pp. 17, 18.  Thus, not only is

Utica inapplicable but it appears clear that there is no merit to

plaintiff's position that he "occupied" the flatbed truck as that

term is defined in the Policy or that he had a "continued

relationship" with it.[4]  As such, defendant's motion to dismiss

in this regard is properly granted.

Plaintiff has also argued that he is entitled to

coverage under the Policy because he was occupying the tow truck.

---

[4]   Notably, in all of the cases cited by the parties in
     which the Utica test was applied, the claimant had at
     some point prior to the accident been physically inside
     the insured vehicle.

Plaintiff has alleged in the complaint, however, only that he is entitled to coverage under the Policy because he was occupying the flatbed truck when his injuries occurred.  See Def. Exh. A: Complaint, ¶¶ 15, 17.  Because he has not alleged that he was occupying the tow truck it would appear that his argument in this regard is not properly before the Court.  See Pennsylvania v. PepsiCo, Inc., 836 F.2d 173, 181 (3d Cir. 1988)(Finding that a complaint may not be amended by a brief filed in opposition to a motion to dismiss).

This notwithstanding, even if the Court were to consider plaintiff's argument it does not appear that he is able to establish all four prongs of the Utica test with respect to the tow truck and, thus, summary judgment in plaintiff's favor appears unwarranted.  In particular, it does not appear that plaintiff is able to establish either the third or fourth criteria -- that he was "vehicle oriented" when his injury occurred or that he was engaged in a transaction essential to the use of the tow truck at the time of the accident.

Indeed, by plaintiff's own testimony, he had already determined that the tow truck was of no use in towing the disabled vehicle and had not only pulled it out of the way to permit Mr. Davis to park the flatbed truck directly in front of the disabled vehicle, but plaintiff then exited the tow truck and walked away from it to assist Mr. Davis in loading the disabled

vehicle onto the flatbed truck.  Further, plaintiff was along
side the flatbed truck when he was injured.  As such, it appears
that at the time of the accident plaintiff was not engaged in any
activity that involved the use of the tow truck but had abandoned
the idea of using it and left it to assist Mr. Davis with the
flatbed truck.  At that point it appears that the tow truck
became extraneous to plaintiff's efforts to assist the disabled
vehicle and, thus, he cannot be considered to have "occupied" the
tow truck when he was injured.

        These circumstances are almost identical to those in
Downing v. Harleysville Insurance Co., supra, where, as
previously discussed, the claimant was injured by a third vehicle
after he stopped on the highway to assist a motorist with a flat
tire.  Having exited the vehicle in which he was riding the Court
found that he had severed his connections with that vehicle
thereby becoming "highway oriented."  Downing, 412 Pa. Super. at
23, 602 A.2d at 874-75.  Moreover, the Court concluded that Mr.
Downing's actions at the time of the accident did not in any
manner involve the car he had been riding in and that he was not
engaged in a transaction essential to the use of that vehicle
when he was injured.  Id.

        In this case, like in Downing, plaintiff exited the
tow truck for the purpose of helping Mr. Davis with the flatbed
truck.  At that point he was no longer "oriented" to the tow

truck and was not engaged in a transaction essential to use of the tow truck.  In fact, he did not "use" the tow truck at all having determined that the disable vehicle could not be towed.

Plaintiff nevertheless argues that he, unlike Downing, was acting within the scope of his employment and that because he arrived at the scene to assist the disable vehicle and was engaged in that very activity when he was injured, he was "vehicle oriented" and engaged in a transaction essential to the use of the tow truck.  Whether or not plaintiff was acting within the scope of his employment and was engaged in a transaction in keeping with that employment, however, is not the test and does not negate the fact that after determining that the tow truck was useless in assisting the disabled vehicle he exited it, left it, and was not using it to perform his job when the accident occurred.  In fact, he had turned his attention to using the flatbed truck when he was injured which was not essential to the use of the tow truck.

In this manner, <u>Petika v. Transcontinental Insurance Co.</u>, 855 A.2d 85 (Pa. Super. 2004), appears to be instructive. In that case, the claimant was part of a maintenance crew that was working on an interstate highway.  As he and a coworker were driving their respective trucks back to the equipment yard, a number of sand bags fell off the flatbed truck, which was being driven by the co-worker, and spilled onto the highway.  Plaintiff

13

exited the truck he was driving in order to signal to oncoming
motorists to slow down while the driver of the flatbed truck
tried to clear the sand bags from the highway.  Shortly
thereafter, the claimant was struck by an oncoming car and
subsequently sought underinsured motorist benefits under his
employer's policy.  The Court found that the claimant was not
covered under the policy because he was not "occupying" his truck
when he was injured.  Specifically, the Court found that the
claimant could not satisfy the vehicle orientation requirement
announced in Utica because he became highway oriented when he
exited his truck for the purpose of trying to slow down and
manage oncoming traffic.  Id., 855 A.2d at 89.  The Court further
stated that, notwithstanding that the claimant may have intended
to return to his truck at some point in time and that he was
acting appropriately in an emergency situation, his own vehicle
was extraneous to the efforts he was engaged in when he was
injured.  Id.

        Here, plaintiff, like Petika, was engaged in activity
extraneous to his vehicle – the tow truck – when he was injured
as he left it to assist Davis with the flatbed truck.  Under
Petika, the fact that he was acting within the scope of his
employment and arguably doing what was required of him by
assisting a disabled vehicle, does not alter that fact.  It
therefore cannot be said that plaintiff was "occupying" the tow

14

truck at the time of the accident.  See Curry v. Huron Insurance Co., 781 A.2d 1255, 1258-59 (Pa. Super. 2001), allocatur denied, 568 Pa. 720, 797 A.2d 913 (2002) (Finding that although the insured vehicle had been provided to transport the plaintiff to the runway-paving project site and was equipped with a rotating yellow beacon to demarcate his position in the runway, the plaintiff had exited the vehicle to test the compaction of the road surface at the time of the accident and, thus, was not engaged in a transaction essential to the use of the insured vehicle.)

Nor does Property and Casualty Insurance Co. v. Caperilla, 2004 WL 1551739 (E.D. Pa. July 9, 2004), upon which plaintiff relies, compel a different result.  In that case, a police officer had responded to a call to assist another officer with a pedestrian stop.  Having arrived at the scene, the officer exited his police car, leaving the engine running and the lights flashing, and began to cross the street towards the other officer when he was struck by an oncoming car.  The Court found that Caperilla was not only vehicle oriented but was engaged in a transaction essential to the use of his patrol car at the time he was injured.  Id. at *2.  In so finding, the Court relied on the fact that Caperilla had left the patrol car running with the flashers on and, thus, was "continuing to utilize the vehicle at the time of the accident."  As well, the Court noted that in his

15

capacity as a police officer Caperilla was frequently required to enter and exit his patrol car to carry out his duties and that he had used his patrol car to transport him to a pedestrian stop. Id.

Here, although it is undisputed that plaintiff used the tow truck to transport him to the scene and undoubtedly uses it to transport him to other calls to assist disabled vehicles, he did not continue to use the tow truck to carry out his duties in this particular instance.  Rather, unlike in Caperilla, plaintiff determined that he could not use the insured vehicle and left it in order to use another vehicle to perform the task at hand. Thus, it does not appear that Caperilla provides the basis for finding that plaintiff was vehicle oriented or engaged in a transaction essential to the use of the tow truck when his injury occurred.

Because plaintiff is unable to demonstrate that he was occupying either the flatbed truck or the tow truck when his injury occurred, it appears that he is not entitled to coverage under the Policy.  Accordingly, it is recommended that the motion for summary judgment submitted on behalf of defendant (Docket No. 13) be granted, and that the motion for summary judgment submitted on behalf of plaintiff (Docket No. 15) be denied.

Within ten (10) days of being served with a copy, any party may serve and file written objections to this Report and

16

recommendation.  Any party opposing the objections shall have
seven (7) days from the date of service of objections to respond
thereto.  Failure to file timely objections may constitute a
waiver of any appellate rights.

                              Respectfully submitted,

                              /s/ Amy Reynolds Hay
                              AMY REYNOLDS HAY
                              United States Magistrate Judge


Dated:   12 June, 2006


cc:  Edward A. Shenderovich, Esquire
     1600 Law & Finance Building
     Pittsburgh, PA 15219

     Allan C. Molotsky, Esquire
     Post & Schell
     Four Penn Center
     1600 John F. Kennedy Blvd.
     Philadelphia, PA 19103